

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 10, 1961

Mr. Durwood Manford, Chairman
State Board of Water Engineers
P. O. Box 2311
Austin 11, Texas

Opinion No. WW-1037

Re: Under the submitted facts
and assuming that all pro-
ceedings in promulgating
the Rules, Regulations
and Modes of Procedure
of the Board of Water
Engineers in 1953 and in
the 1955 revision were
in due and proper form,
whether Board Rule 615.1
was valid when first
adopted and when re-pro-
mulgated in 1955, and
related questions.

Dear Mr. Manford:

In your request for an official opinion from this office
you relate the following facts in connection with your request:

On June 19, 1957, the Board of Water Engineers issued
Permit No. 1880 to the Wichita County Water Control and Improve-
ment District No. 1 which authorized the construction of a
reservoir at what is known as the Ringgold Site on the Little
Wichita River in Clay County, Texas. The time for the construc-
tion works allowed by the Permit was extended on two occasions,
the last extension being granted until April 10, 1961, in which
to commence construction of the reservoir.

Your letter relates that the City of Wichita Falls sub-
mitted an application to the Board for a permit to construct a
dam and reservoir on the Little Wichita River in Clay County,
Texas, at what is known as the Halsell Site, approximately 35
miles upstream from the Ringgold Site, this application being
submitted on October 5, 1960, such application being for the
purpose of appropriating public waters from such reservoir for
municipal purposes. You state that the application on the
Halsell Site has not been accepted for filing and set for hearing
by the Board primarily because hydrologic studies indicate that
there is no unappropriated water available in the source of supply
by virtue of the fact that the appropriation authorized by Permit
No. 1880 is based upon the development of most of the dependable

yield of the Little Wichita River.

You also relate that at a bond election in the District on December 6, 1958, the voters disapproved the issuance of district bonds to finance the project at the Ringgold Site, and that more recently the voters of the City of Wichita Falls approved the issuance of city bonds to finance the construction of a reservoir on the Little Wichita River and that the city elected to proceed with the application on the Halsell Site.

Your letter further states that after a discussion had with representatives of both the city and the district that the Board received an instrument executed by the district purporting to waive all the district's rights under Permit No. 1880 with the request that the Board cancel the Permit without a hearing.

Your principal question is whether the Board may proceed under Board Rule 615.1, a procedure which authorizes cancellation of a permit to appropriate water without notice of hearing and hearing thereon where the holder of the permit tenders the same voluntarily for cancellation with a written waiver.

For the purpose of showing Board Rule 615.1 in context, we quote here all subsections under the heading numbered 615.

"CANCELLATION OF PERMITS AND CERTIFIED FILINGS

"615.1  CANCELLATION WITH CONSENT: Upon being advised that the holder of a permit or certified filing no longer desires to appropriate water, the Board sends a written waiver to the owner of the water right and the owners of the land, if different ownerships are involved.  If the permit or certified filing is held by a political subdivision, such waiver will be mailed to its governing body.

(a)  Documents Needed to File:  Written waiver consenting to the cancellation.

(b)  Fees:  None.

(c)  Notice and Hearing:  None.

(d)  Action of the Board:  An order canceling the permit or filing in whole or in part is entered and mailed to the county clerk for recording, with the request to return same for filing.

"615.2 CANCELLATION WITHOUT CONSENT: Under Article 7474, the Board is given administrative power to find facts which will effect a legal forfeiture of a water permit or certified filing, or a portion thereof, where no water has been used, where the work required in a permit or certified filing has not been begun or pursued with reasonable diligence, and where there is no beneficial use of water.

(a) Documents Needed to File: None. This proceeding is initiated by the Board.

(b) Fees: None.

(c) Notice and Hearing: Under Articles 7474 and 7519, actual notice must be given not only to the record owner of the water right but also the owner of the land, where different ownerships are involved, notice will be given its agent for service of citation. Such notice will be given 30 days before the hearing is to be held, and a public hearing is required at which the holder of the permit or certified filing may appear or he may file a written statement resisting the cancellation.

(d) Action of the Board: The Board enters a resolution or order either declaring the facts and canceling the water right, or the Board resolves that it refuses to cancel same.

"615.3 CANCELLATION UNDER ARTICLE 7519a: Article 7519a effects the cancellation of all permits unused for a period of ten consecutive years prior to January 1, 1955. The law requires the Board to follow cancellation procedures.

(a) Documents Needed to File: None. The Board initiates the proceeding.

(b) Fees: None.

(c) Notice and Hearing: A hearing date is set by the Board and notice thereof is sent by registered mail, return receipt requested, to the permit holder at the last address shown by the records of the Board at least 90 days prior to the effective date of such cancellation hearing.

> (d) Action of the Board: If the facts
> disclose that no water authorized to be
> withdrawn has been beneficially used for
> a period of ten consecutive years, the
> Board orders that the permit be cancelled."

Board Rule 615.1 was promulgated pursuant to the Board's general rule-making power which is provided for in Article 7531, Vernon's Civil Statutes. Article 7531 provides in part as follows:

> "The Board of Water Engineers shall adopt
> rules and regulations, including modes of
> procedure, for the performance of the duties,
> powers, and functions prescribed and vested
> in it by this Chapter, and for the enforce-
> ment of its provisions, and shall have a seal,
> the form of which it shall prescribe. All
> such rules and regulations made for the ad-
> ministration and enforcement of the provisions
> of this Chapter, and that are reasonable and
> not in conflict herewith, shall be binding
> upon all persons affected by such provisions.
> The rules and regulations shall be printed,
> and copies shall be furnished to all interested
> persons upon application therefor, provided,
> that the Board, may at its discretion, make a
> reasonable charge therefor. After the rules
> and regulations shall have been adopted and
> printed, no amendment of an existing rule or
> no new rule shall be made effective until at
> least thirty (30) days after copy of same shall
> have been published one time in a newspaper of
> general circulation in each of the three Water
> Divisions described in Article 7475 of the
> Revised Civil Statutes of Texas, 1925."....
> (Emphasis supplied)

For the purpose of answering your request, we assume that Board Rule 615.1 was published as required by Article 7531, and was validly promulgated. The foregoing provision conditions the Board's rule-making power as follows: (1) All such rules and regulations must be made for the administration and the enforcement of Chapter 1 of Title 128 of the Revised Civil Statutes of Texas of 1925, as amended. (2) Such rules and regulations must be reasonable. (3) Such rules and regulations must not be in conflict with existing statutes.

One of the duties of the Board under Chapter 1 of Title 128 is set forth in Article 7472d of Vernon's Civil Statutes as

follows:

> "It shall be the purpose and policy of the
> State and of the enactments in accord there-
> with, in effecting the greatest beneficial
> utilization of waters of the State, to cause
> to be made all surveys essential to disclose
> the measure and potential availability of the
> water resources of the State to uses recog-
> nized; and to ascertain from necessary inves-
> tigation the character of the principal re-
> quirements of the distinct regional division
> of the watershed areas of the State for the
> uses herein authorized, to the end that dis-
> tribution of the right to take and use the
> waters of the State may be the more equitably
> administered in the public interest, and privi-
> leges granted for the uses recognized may be
> economically co-ordinated, achieving the maxi-
> mum of public value from this resource; and
> recognizing alike the distinct regional ne-
> cessities for water control and conservation,
> and for control of harmful floods."

The Board is likewise under a duty to deny an application for a permit to appropriate public waters if the Board finds that there is no unappropriated water in the source of supply, if the proposed use will impair existing water rights, or if the granting of the permit is detrimental to the public welfare. Art. 7506, V.C.S.

It would seem clear then that Board Rule 615.1 clearly meets the first two tests layed down in Article 7531, ie., (1) That the Rule made must be for the administration and enforcement of Chapter 1 of Title 128 of the Revised Civil Statutes of Texas, 1925, as amended, and (2) that the Rule must be reasonable.

It remains to be considered whether Board Rule 615.1 is in conflict with cancellation procedures prescribed by statute. Article 7519a, Vernon's Civil Statutes, which was adopted by the Legislature in 1953, and authorized the cancellation of all water rights under which no water has been used for a period of ten consecutive years prior to January 1, 1955, and prescribes a definite procedure for the cancellation of permits under the conditions therein set forth. In 1957, the Legislature amended Article 7519a to authorize the cancellation of all or any part of the water rights to the extent that water has not been used thereunder during the 10-year period prior to the institution of cancellation proceedings. Article 7519a prescribes specifically that

notice of hearing and a hearing to be had before the Board proceeds to act pursuant to those statutory provisions, and this procedure must be followed under this type of cancellation. Notice of hearing, where provided for by the Legislature for a specific function is a prerequisite to the jurisdiction of an administrative agency to proceed to exercise that function. See Maryland Casualty Co. v. Lafield, 29 S.W.2d 444 (Civ.App 1930), rev'd on other grounds, 119 Tex. 466, 33 S.W.2d 187 (1930); and American Surety Co. of New York v. Mays, 157 S.W.2d 444 (Civ.App.1941, error ref. w.o.m.)

There is, however, an important distinction between cancellation under Board Rule 615.1 and cancellation under Article 7519a. Under Board Rule 615.1, only voluntary cancellations are authorized. The person whose rights might be affected by cancellation waives any right he would otherwise have to a notice and hearing. It is axiomatic that one may waive such a right.

Article 7519a applies where cancellations are involuntary. In such cases, notice and hearing is essential to any valid action of the Board.

We do not, therefore, construe the two procedures as being in conflict, and without such conflict, it is apparent that Board Rule 615.1 meets the third limitation on the rule-making power of the Board conferred by Article 7531.

You have also asked whether you must wait until the expiration of the current Board order extending the time for the District to commence construction before proceeding under Board Rule 615.1. We see no basis for such a requirement, for the waiver executed by the District waives all rights the District may have, including all rights granted under the Board's order extending the time for the commencement of construction.

## S U M M A R Y

Under the facts submitted and assuming that all proceedings in promulgating the Rules, Regulations and Modes of Procedure of the Board of Water Engineers in 1953 and in the 1955 revision were regular, Board Rule 615.1 was valid when first adopted and when repromulgated in 1955. The Board may, under Board Rule 615.1, entertain cancellation of the subject permit prior to the expiration of the entension of time to commence

construction under the subject permit.

Very truly yours,

WILL WILSON
Attorney General of Texas

By
Houghton Brownlee, Jr.
Assistant

HB:jh

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Iola Barron Wilcox
Robert Lewis
Vernon Teofan
Robert Rowland
Sam Wilson

REVIEWED FOR THE ATTORNEY GENERAL BY:

Leonard Passmore